370 P.2d 59

Barbara G. WILLIAMS, Executrix of the Estate of Oran Adna Williams, deceased, and widow of Oran Adna Williams, deceased, Petitioner,

v.

WILLIAMS INSULATION MATERIALS, INC., Defendant-Employer,

and

The Industrial Commission of Arizona, Defendant Insurance Carrier, Respondents.

No. 7101.

Supreme Court of Arizona.

En Banc.

March 14, 1962.

McRae, Elliott & Thompson, Phoenix, for petitioner.

Lorin G. Shelley, Phoenix, for respondent Industrial Commission; Donald J. Morgan, James D. Lester, Edward E. Davis, C. E. Singer, Jr., Phoenix, of counsel.

LOCKWOOD, Justice.

This is an appeal by certiorari from an award of the Industrial Commission denying two claims of petitioner Barbara G. Williams under the Workmen's Compensation Act. On May 7, 1959 Oran A. Williams, president of Williams Insulation Materials, Inc., and husband of petitioner, sustained severe burns while fighting a fire on the corporation's premises and died ten days later. Prior to her husband's death, petitioner filed a claim on his behalf which was rejected July 8, 1959. Thereafter as executrix of his estate she filed for a rehearing and for the widow's benefits under the act. The claims were consolidated, and after a formal hearing the Commission on April 12, 1960 issued an award denying both.

The corporation was formed on January 31, 1957 to buy, sell and manufacture insulation, acquiring the business from Williams Insulation Company, a co-partnership which remained in business to install the insulation. Deceased was president and petitioner was secretary of the corporation and together with petitioner's father were

its principal stockholders and made up its Board of Directors. On March 15, 1957 the Industrial Commission issued a Workmen's Compensation and Employer's Liability Policy to the corporation stating in its covering letter:

*"It is understood that officers of corporations receiving remuneration for personal services rendered are covered under the terms of the policy in the same manner as other employees.* The matter of rejection is personal to the employee (A.R.S. § 23–906) and if executives do not elect to be covered under the policy, it is necessary that they reject the terms and provisions of the Compensation Acts. Should they elect to reject, the forms are to be signed in duplicate and one forwarded to this office for filing within five days of signing \* \* \*." (Emphasis added.)

The policy was signed and at no time did deceased reject the coverage under the terms set forth in the letter.

The by-laws were adopted February 8, 1957 and provided that the compensation of the officers, agents and directors of the corporation would be fixed by the board. A motion was passed that no salaries be paid at that time but would be determined at a future date in accordance with earnings. The Board of Directors met from time to time, and the ordinary procedure with respect to the records of the meetings was for the attorney of the corporation to make a memorandum of the occurrences thereat with the actual preparation of the formal minutes being made thereafter and approval and signing taking place at the next board meeting. The official minutes for the meeting of January 7, 1959 were as follows:

"\* \* \* income was realized in an amount that would provide sufficient funds to pay both Oran A. Williams and his wife salaries for the current fiscal year \* \* \*. It was agreed at this meeting that salary payments be established to Oran A. Williams and Barbara G. Williams commencing with the next fiscal year, which commences February 1, 1959, in an amount to be determined after the current year's accounting is closed and the audit is completed."

The minutes for the meeting of April 9, 1959 stated:

"It was also moved, seconded and passed that salaries be paid to Oran A. Williams in the amount of $1,000.-00 per month and to Barbara G. Williams in the amount of $500.00 per month commencing with the fiscal year commencing February 1, 1959, and thereafter."

The formal minutes of both meetings were prepared subsequent to the accident.

No salary was paid deceased until petitioner, four days after the accident, requested and received $3,000.00 from the corporation which sum the payroll record shows to have been $1,000.00 salary for each of the three preceding months. No premiums were paid by the corporation to the Industrial Commission on behalf of deceased until August 5, 1959 at which time $383.93 was tendered by the corporation and rejected by the Commission.

The Commission's denial of benefits to petitioner was based on findings that: a) deceased did not appear on the corporation's payroll prior to the accident; b) the first payment for services rendered, as shown by the books and records of the corporation, was made May 11, 1959 at the request of petitioner; c) this payment was not made under any contract of hire and would not have been made except for the exigencies of the situation occasioned by the accident; and d) no coverage was afforded under the workmen's compensation insurance of the corporation since any services performed by deceased were performed in the interest of his shareholdings.

Applicant argues that the award be set aside for either or both of the following reasons: 1) there is no issue as to the facts, therefore the findings are conclusions of law and as such are erroneous;

2) upon the entire record there is no substantial evidence to support the Commission's conclusion. The Commission contends that its award must be upheld because: 1) applicant relied entirely upon the purported authorization of a salary for deceased in proof of a contract of hire, and the only evidence adduced in support thereof was: a) the testimony of interested witnesses and b) extrinsically and intrinsically suspicious evidence neither of which, in the absence of corroboration, need be considered; 2) officers of a corporation are not employees within the purview of the Workmen's Compensation Act; 3) any contract of hire was void or voidable vis-à-vis the Commission standing in the shoes of the employer and 4) any authorization of the payment of a salary to deceased did not amount to a contract of hire under the act.

In regard to the Commission's first contention, we agree that uncorroborated testimony from an interested witness and other suspicious evidence may be disregarded by the Commission; however where such evidence is corroborated by a disinterested witness it may not be disregarded [1] and in the absence of explanation, the reasonable statements of unimpeached witnesses are presumed to be true when uncontradicted.[2]

1. Stanley v. Moan, 71 Ariz. 359, 227 P.2d 389 (1951).

2. Cutler v. State, 15 Ariz. 343, 138 P. 1048 (1914).

**94**

■ Cecil A. DeMarcus is a certified public accountant engaged in private practice in Phoenix, one of his clients being the defendant employer. DeMarcus testified that a salary of $1,000.00 per month was authorized to be paid to deceased commencing February 1, 1959 thereby corroborating the testimony of the applicant, the attorney for defendant employer and the minutes of the Board of Directors meeting. He also testified that it was the policy of the corporation to accrue salaries only when they were paid and that deceased had salary due and owing him which he could have drawn at any time. No attempt was made to discredit or impeach DeMarcus nor was there any evidence contradicting him. The Commission argues that DeMarcus is nevertheless an interested party whose testimony may be disregarded because the corporation is one of his clients, and if the applicant is unsuccessful in this action she may discharge him. We have previously set aside awards of the Commission based upon the testimony of the applicant corroborated by that of fellow employees, holding such evidence to be disinterested.[3] The testimony of DeMarcus must be given the same effect. What we said in Canion v. Southern Pacific Co., 52 Ariz.

245, 80 P.2d 397 (1938) concerning railroad employees is equally applicable here: we think it is going too far to assume, as a matter of law, that all C.P.A.'s will commit willful and deliberate perjury merely because a client is involved in proceedings and the accountant's testimony may affect the outcome. Therefore since the unimpeached testimony of the interested parties and the "suspicious" minutes of the board of directors meetings[4] were corroborated by the testimony of DeMarcus, such evidence may not be arbitrarily disregarded by the Commission. Furthermore since no contradictory evidence was introduced and the situation is one from which different inferences may be drawn, the findings of the Commission constitute not findings of fact, but conclusions of law.[5] Where only questions of law are involved we are not bound by the conclusion of the Commission but are at liberty to draw our own legal conclusions from the record before us.[6]

■ The Commission's second contention, that officers are not employees within the meaning of the Workmen's Compensation Act, is unfounded. A.R.S. § 23–901 (1956) defines an employee as: "Every person in the service of any employer subject

3. See e. g. Sheridan v. Industrial Commission, 84 Ariz. 264, 327 P.2d 90 (1958); Ratley v. Industrial Commission, 74 Ariz. 347, 248 P.2d 997 (1952).
4. The official minutes were prepared by the attorney for the corporation after the accident from notes taken at the meetings prior to the accident, which minutes were not exactly the same as the notes.
5. Goodyear Aircraft Corp. v. Industrial Commission, 62 Ariz. 398, 158 P.2d 511 (1945).
6. O'Neill v. Industrial Furnaces, 72 Ariz. 149, 231 P.2d 768 (1951).

to the provisions of this chapter," with certain exceptions not here relevant. The corporation is an employer subject to the act under A.R.S. § 23–902 (1956). Thus the act does not specifically exclude officers from its coverage, whereas the policy provision quoted *supra* does specifically include them if they receive remuneration for services rendered. In other jurisdictions it has been held that officer stockholders of small corporations are covered by the act when they regularly discharge duties which if performed by another would confer employee status.[7] This includes duties supervisory in nature as well as physical.[8] Since in the instant case deceased spent his full time supervising the manufacture of insulation and getting in raw materials for such manufacturing, along with acting as president, we hold that if a contract of hire existed under which he received remuneration for such services, he is entitled to workmen's compensation.

The Commission contends that as insurance carrier it may make any defense which the corporation might have made, and that any contract of hire with deceased is void or voidable because: a) there is no evidence that the third member of the board of directors received notice of the board meeting at which the salaries were authorized, b) deceased's vote was necessary to pass the resolution authorizing his own salary, and c) a director may not contract with his corporation for his own private profit because of the conflict of interests. If we assume, *without deciding,* that the Commission is correct in all three instances, the authorization of the salaries was voidable but not void.[9] Therefore the authorization was valid at the time of the accident, although it was open to the corporation to avoid or to ratify it. On January 18, 1960 all of the directors, officers and stockholders of the corporation ratified the board's action in setting the salaries, thereby removing the corporation's defense. It is irrelevant that the ratification took place immediately prior to the hearing because, in the absence of fraud, ratification has been held to validate the voidable acts of directors in fixing their own salaries, even though such ratification has taken place after suit has been commenced and for the purpose of defeating the suit.[10] Thus since in the instant case the corporation would

---

7. Davies v. Stillman White Foundry Company, 163 A.2d 44 (R.I.1960); 1 Larsen, Workmen's Compensation Law § 54.-21 (1952).
8. See e. g. Goldmann v. Johanna Farms, Inc., 26 N.J.Super. 550, 98 A.2d 142 (1953).
9. Kenton v. Wood, 56 Ariz. 325, 107 P.2d 380 (1940). Martin v. Santa Cruz Water Storage Co., 4 Ariz. 171, 36 P. 36 (1894).
10. Blish v. Thompson Automatic Arms Corp., 30 Del.Ch. 538, 64 A.2d 581 (1948); Putnam Juvenile Shoes Corp., 307 Mo. 74, 269 S.W. 593 (1925); 5 Fletcher, Cyclopedia Corporations § 2139 (1952).

have been precluded from avoiding the contract of hire, the insurer asserting the corporation's defenses is likewise precluded. The ratification did not, as the Commission argues, bring into existence a contract of hire where none existed at the time of the accident, it merely precluded the avoidance of a valid but voidable contract.

The Commission's final contention is that the authorization by the board of directors did not constitute a contract of hire for purposes of Workmen's Compensation. We disagree. From the date the bylaws were adopted it was contemplated that the corporation would pay for deceased's services when able. Thus the authorization of a salary at the January 7, 1959 meeting of the board was an express offer to deceased which he accepted by supervising the manufacturing of insulation and by bringing in cardboard to be used therein, during February, March and April 1959. The exact amount of the salary was set and made retroactive at the meeting of April 9, 1959. Once applicant had established these facts, we believe it unimportant that the accident occurred before payment of salary was to be made whether such payment was to be at the end of the week or the month, or as in this case, to be drawn out as needed and if

not so drawn to be accrued at the end of the year. What is important is that deceased was entitled to a specific salary for services performed, which services were performed.

The additional facts that deceased's salary was not included in the payroll record or in the quarterly report prior to the accident and that no premiums were paid to the carrier on deceased's behalf will not prevent recovery. The corporation operated under a cash system of accounting, thus since the salary was not drawn until May 11, 1959 and would not be otherwise accrued until the end of the year it was quite proper that the first entries appeared after the date the salary was drawn. Liability under the act is not determined by whether premiums were paid on behalf of the employee,[11] by whether the salary was in fact received before the accident, nor by the declarations and actions of the parties. Liability is determined by the fact of the relationship that exists.[12] The facts here establish that deceased was employed by the corporation under a contract of hire.

For the foregoing reason the award of the Industrial Commission is set aside.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.

11. Carnes v. Industrial Commission, 73 Ariz. 264, 240 P.2d 536 (1952); West Chandler Farms Co. v. Industrial Commission, 64 Ariz. 383, 173 P.2d 84 (1946).

12. Blasdell v. Industrial Commission, 65 Ariz. 373, 181 P.2d 620 (1947).