441 P.2d 252

Curtis D. COCKBURN, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, and Cave Creek Building Supply, Inc., Respondents.

No. 1 CA–IC 169.

Court of Appeals of Arizona.

May 27, 1968.

John S. Schaper, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Noel J. R. Levy, Phoenix, for respondent, The Industrial Commission.

DONOFRIO, Judge.

This is a writ of certiorari to review the lawfulness of the decision of the Industrial Commission of Arizona, finding petitioner's claim noncompensable.

We are called upon to determine two issues. First, whether an officer, director and stockholder of a corporation performing certain services and work for the corporation is eligible for compensation under the Workmen's Compensation Act. Second, whether the petitioner herein is to be considered as having rejected the terms of the Act, therefore rendering his claim noncompensable.

Curtis D. Cockburn, the petitioner herein, together with Charles L. Davis, in 1963 organized a corporation known as the Cave

Creek Building Supply, Inc. They have been the only directors and shareholders, and their wives the only other officers of the company since. Both men worked full time in the business. In addition to ministerial work, petitioner performed physical labor such as carpentry work and electrical work in the corporation's contracting business. In November 1964 the corporation applied to the Commission for a policy providing workmen's compensation coverage. A policy was issued in December of 1964, and a letter was sent to the corporation by the Commission advising that corporate officers "are excluded from coverage until notification of the terms of the contract of hire is given to this Commission". It further advised, "if officers who draw salaries do not elect to be covered it will be necessary that they reject the terms and provisions of the Compensation Act." The policy which was issued to Cave Creek Building Supply, Inc. contained the following endorsement:

"* * * it is understood and agreed that one or more of the officers of the employer corporation is performing services for the corporation without remuneration, salary or pay; that such individuals are not considered covered under the terms of this policy until notification of the terms of the contract of hire is given to the Commission."

In 1964 none of the corporate officers received a fixed salary or had a "contract of hire" with the corporation. They did not believe themselves to be eligible for, or covered by, workmen's compensation.

On February 19, 1966 petitioner, together with Davis and their wives, executed formal written rejections of the Workmen's Compensation Act. There is a conflict in the testimony as to whether the Commission's auditor requested these rejections, or whether he merely left the rejection slips to be made available to employees. Cockburn testified:

"The auditor had reviewed our employment records and noted that the officers were not drawing salary, and so he asked.

us to go ahead and sign these rejection slips just to clarify the record down here as we understood it, it wouldn't make any difference anyway since we weren't covered, so we just signed them as a favor."

In June 1966 an endorsement was issued by the Commission to all corporate policies which eliminated the December 1964 endorsement, and provided that active executive officers would be covered but that officers performing ministerial functions would not be. Employers were advised that payroll for officers would be covered but that officers performing ministerial functions would not be. Employers were advised that payroll for officers would have to be included in reports to the Commission for premium purposes. The petitioner then had the bookkeeper report him and Mr. Davis to the Commission as employees at a minimum wage of $200 per month. This wage was never authorized by the minutes of the corporation.

Petitioner was injured on the job in September 1966 when he fell off a ladder. In October 1966 he was loading a truck with cement tile and again injured his back. He was hospitalized for eleven days and had surgery for a disc. He made application for workmen's compensation and an award was issued denying compensation as the result of the formal rejection of the Workmen's Compensation Act by petitioner in February of 1966.

With reference to the first issue, it is generally accepted that the individual corporate officer and stockholder who acts also in the capacity of a worker is entitled to workmen's compensation. 58 Am. Jur., Workmen's Compensation § 150. For cases on this subject see 81 A.L.R. p. 644. In Williams v. Williams Insulation Materials, Inc., 91 Ariz. 89, 370 P.2d 59 (1962), our Supreme Court recognized that a corporate officer may also be considered an employee. It said:

"The Commission's second contention, that officers are not employees within the meaning of the Workmen's Com-

pensation Act, is unfounded. A.R.S. § 23-901 (1956) defines an employee as: 'Every person in the service of any employer subject to the provisions of this chapter,' with certain exceptions not here relevant. The corporation is an employer subject to the act under A.R.S. § 23-902 (1956). Thus the act does not specifically exclude officers from its coverage, whereas the policy provision quoted supra does specifically include them if they receive remuneration for services rendered. * * *" 91 Ariz. at 94, 370 P.2d at 63

We believe there is no question but that a corporate officer, whether or not he is also a director or stockholder, whose work for the corporation is neither casual not exclusively ministerial, was intended to be eligible as an employee for benefits as set forth in A.R.S. § 23-1021.

■ There is no question in our minds but that petitioner, who from the very inception did general work for the corporation, particularly such things as carpentry and electrical work in connection with the business, was entitled to be covered by the Act as an employee if he drew wages authorized by the corporation, and if he did not reject the terms of the Act.

We next consider the crucial question of whether under the circumstances of this case petitioner is to be considered as having rejected the Act.

The Commission based its award on the formal rejection of the Workmen's Compensation Act by petitioner in February of 1966. Petitioner takes the position that his rejection was invalid because of the subsequent endorsement by the Commission, effective July 1, 1966.

A.R.S. § 23-906 provides:

"A. Employers who comply with the provisions of § 23-961 as to securing compensation shall not be liable for damages at common law or by statute, except as provided in this section, for injury or death of an employee wherever occurring, but it shall be optional with employees to accept compensation as pro-

vided by this chapter or to reject the provisions of this chapter and retain the right to sue the employer as provided by law."

Subsection B provides that the employee's election to reject provisions of the Workmen's Compensation chapter shall be made by a notice in writing, signed and dated by him, and given to his employer, in duplicate, further providing a form to be substantially followed. This rejection of the Act is further covered by the Rules of the Industrial Commission. Rule 77 provides for a revocation of an existing rejection, as follows:

"Where an employee has served upon an employer a written notice rejecting the provisions of the Workmen's Compensation Law, such employee may revoke such rejection by serving upon his employer a written notice that the employee revokes his rejection of the provisions of the Workmen's Compensation Law. Within five (5) days thereafter the employer shall file with the Commission a duplicate of such notice of revocation.

"From and after the serving of such notice upon an employer, the right of the employee to the compensation provided by the Workmen's Compensation Law shall be reinstated as regards any injury subsequently occurring. See A.R.S. Sec. 23-906."

■ In Arizona, by case law, and by the Rules of the Industrial Commission, rejections of the Act made by an employee prior to his employment, or prior to the time the employer has complied with the Act, have been deemed to be valid rejections which carry over into subsequent employment by the same employer, and which carry over after the same employer has procured insurance pursuant to the Act, whichever the case may be. Industrial Commission v. Orizaba Mining Company, 61 Ariz. 152, 145 P.2d 850 (1944), Rule 80, Rules of The Industrial Commission.

The Supreme Court ruled on the effect of a rejection filed by an employee in Coy-

ner v. Industrial Commission, 77 Ariz. 210, 269 P.2d 712 (1964). They stated:

> "The contract of insurance between the employer and the Industrial Commission is made for the benefit of the employees and their dependents. When Coyner, as an employee of the employer Coyner Crop Dusters rejected the benefits of the Compensation Act he, in legal effect, cancelled the contract of insurance insofar as it applied to him. * * *"

In addition, the record shows that the claimant did not receive a salary compensation from the employer. The purported wage of $200 per month which was reported for premium purposes was a fiction. The corporation never met as a body to allow the same, and the minutes of the corporation do not reflect that any wage was paid to the claimant.

The petitioner raised the question as to whether or not the Commission was estopped to deny coverage to the claimant because it accepted the premiums tendered on the basis of the $200 per month salary which the corporate secretary reported as wages to claimant. The Commission points out that the only method by which the Commission would have become aware that the premiums were being paid on this alleged wage to the claimant would be by an audit. The Commission states in its brief that the audits are usually done each year or two years. The last normal audit on the respondent-employer in this case was done on February 14, 1966. In the normal course of business, another audit would not be due until February 1967 or 1968. The corporation began submitting premiums on the alleged wage on July 1, 1966. As has been stated, the injury occurred in October 1966. The manager of the Commission's Underwriting Department, Mr. Thew, testified as follows:

> "A During the 12 years that I audited these accounts, the normal procedure, and it is still the normal procedure, is to eliminate through an audit the earnings of any individuals who have rejected one or more of the acts, and refund any

paid premiums to them on the wage they were reported (sic)."

It is the opinion of this Court that the rejection which the claimant filed with the employer and with the Commission was a valid rejection, and that this rejection operated to cancel the contract of insurance. The doctrine of estoppel, therefore, does not apply.

For these reasons, the award of the Commission is affirmed.

CAMERON, C. J., and STEVENS, J., concur.